IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**MELISSA M. DANIELS,**

      **Plaintiff,**

v.

**JO ANNE B. BARNHART,**
**Commissioner of Social**
**Security,**

      **Defendant.**

04-CV-6394-BR

OPINION AND ORDER

**MARK MANNING**
CRAM, HARDER, WELLS & BARON
474 Willamette, Suite 200
Eugene, Oregon 97401
(541) 686-1969

      Attorneys for Plaintiff

**KARIN J. IMMERGUT**
United States Attorney
**NEIL J. EVANS**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1024

1  -  OPINION AND ORDER

**LUCILLE G. MEIS**
Office of the General Counsel
**RICHARD M. RODRIGUEZ**
Special Assistant United States Attorney
701 Fifth Avenue, Suite 2900 MS/901
Seattle, WA  98104-7075
(206) 615-2114

    Attorneys for Defendant

**BROWN, Judge.**

Plaintiff Melissa Daniels brings this action for judicial review of a final decision of the Commissioner of Social Security denying her applications for disability insurance benefits (DIB) and supplemental security income payments (SSI) under Titles II and XVI of the Social Security Act.  This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

For the following reasons, the Court **REVERSES** and **REMANDS** the Commissioner's final decision.

## BACKGROUND

Daniels was born on August 7, 1969.  She has a high school education and did past work as a titanium recycler, titanium welder, and sheet-metal fabricator.  She last worked on January 1, 1998, as a titanium recycler.  She stopped working

because she was "too scared for my life to function at work." Tr. 81.[1]

Daniels asserts she has been disabled since January 1, 1998, due to post-traumatic stress disorder (PTSD); depression; possible bipolar disorder, psychosis, or schizophrenia; and constant fear.

Daniels maintains she cannot work because she is "scared of people" and depressed. Tr. 874-75. She also has knee problems that prevent her from standing or sitting very long, and she states sitting causes pain in her back.

Daniels met the insured status requirements under the Act through March 31, 2003, and must establish that she became disabled by that date to recover on her Title II claim.

There is no insured status requirement for a claim under Title XVI, but SSI payments cannot be paid retroactively. 20 C.F.R. §§ 416.203, 416.501. *See also* Social Security Ruling (SSR) 83-20. The relevant period, therefore, for Daniels's Title XVI claim begins on her filing date of October 5, 2001.

---

[1] Citations to "Tr." refer to the page(s) indicated in the official transcript of record filed with the Commissioner's Answer.

## DISABILITY ANALYSIS

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). *See also* 20 C.F.R. § 416.920. Daniels challenges the ALJ's evaluation of the evidence and disputes his findings at Step Five of the sequential process.

To make a determination at Step Five, the ALJ must assess the claimant's residual functional capacity (RFC). To determine the claimant's RFC, the ALJ must evaluate the sustained work-related activities the claimant can still do on a regular and continuing basis despite her limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a). *See also* SSR 96-8p. At Step Five, the Commissioner must determine whether the claimant is able to do any work that exists in the national economy. *Yuckert*, 482 U.S. at 141-42. *See also* 20 C.F.R. §§ 404.1520(e),(f), and 416.920(e),(f). Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can do. *Yuckert*, 482 U.S. at 141-42. *See also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f).

## THE ALJ's FINDINGS

The ALJ found Daniels's ability to perform basic work-related activities was limited by a medial lateral ligament strain in the right knee, asthma, bipolar disorder, and PTSD. The ALJ assessed Daniels's RFC as follows:

> Light work activity lifting 20 pounds occasionally and lifting and carrying 10 pounds frequently. She can sit for 6 out of 8 hours in a workday and stand for 2 of 8 hours in a workday and does require a sit-stand option. She is limited from climbing ladders, ropes and scaffolding and may only occasionally climb ramps and stairs, and occasionally balance, kneel, stoop, crouch or crawl. She must avoid concentrated exposure to extreme cold or heat, fumes, dust, gases, odors and work hazards. She is limited from working in direct public contact and requires no stress positions described as having no production quotas, goals or close teamwork.

Tr. 26.

The ALJ determined Daniels remained capable of performing work in the national economy. The ALJ relied on testimony from the impartial vocational expert (VE) who opined a person of Daniels's age, education, work experience, and RFC could work as a parts salvager and printed-products assembler. The ALJ concluded Daniels was not under a disability and not eligible for DIB or SSI benefits.

**STANDARD OF REVIEW**

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if the "evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F.3d at 1039-40.

**DISCUSSION**

Daniels contends the ALJ did not accurately assess her RFC because he improperly discredited her testimony and discounted the statements of two medical sources.

## I. Credibility Determination

Daniels testified she has PTSD symptoms arising from multiple traumas. She also testified she had a physically and sexually abusive childhood, she was sexually assaulted while

serving in the military, and her husband attacked and raped her when she tried to leave him. In addition, she asserted she escaped from a more recent abusive relationship in which she was held captive and beaten by her former boyfriend.

Daniels has a history of drug abuse and a remote history of alcohol abuse. She testified she became clean and sober on June 6, 2001. She acknowledged she had a one-day drug relapse during the two years before the hearing and drinks about once a year.

Daniels testified she is unable to work because she is "scared of people," gets "really depressed a lot," and does not want to leave her house or get out of bed. Tr. 874-75. She is afraid to go to grocery stores where other people are present. She has anxiety and panic attacks when she is in public. These attacks cause her to hyperventilate and to have difficulty in breathing, talking, and even moving. Sometimes she becomes so frightened that she runs away. She also has nightmares and does not sleep well. She testified these events lead to fatigue and low energy during the day.

Daniels testified her bipolar disorder typically manifests itself in depressive symptoms for a week followed by several days of elevated mood, and she does not usually have a level transition period between these moods. When she is depressed, she sleeps in one-hour increments throughout the day, does not

7 - OPINION AND ORDER

interact with her children, and has suicidal thoughts.  When she is manic, she does not sleep, has hallucinations, and gets very angry.

Daniels testified she has problems with her knee, which makes it painful for her to stand too long, to sit too long, or to run.  She also gets migraines from tension about once or twice a month lasting one to two days.  She stated she has a 10% disability rating from the Veterans Administration (VA) for asthma.

Daniels picks up her children from school, watches them for two or three hours, and then drives them to their father's house.  She has difficulty shopping at grocery stores.  She does not cook due to low energy and depression.  She feeds her children at drive-through, fast-food places.

Daniels testified she only has one friend, who is also bipolar.  They get along well, but they do not see each other often because their elevated moods do not often coincide.  Daniels attends a PTSD management skills group.  She does not like attending the meetings, but she attends in order to get better and to follow her doctor's advice.

The ALJ must provide clear and convincing reasons for discrediting a claimant's testimony regarding the severity of her

symptoms.  *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).
*See also Smolen v. Chater*, 80 F.3d 1273, 1283 (9th Cir. 1996).
The ALJ must "state which . . . testimony is not credible and
what evidence suggests the complaints are not credible."
*Dodrill*, 12 F.3d at 917-18.  *See also Lester v. Chater*, 81 F.3d
821, 834 (9th Cir. 1995); *Reddick v. Chater*, 157 F.3d 715, 722
(9th Cir. 1998).

The ALJ may consider objective medical evidence and the
claimant's treatment history as well as the claimant's
unexplained failure to seek treatment or to follow a prescribed
course of treatment.  *Smolen*, 80 F.3d at 1284.  The ALJ may also
consider the claimant's daily activities, work record, and
observations of physicians and third parties with personal
knowledge about the claimant's functional limitations.  *Id*.  In
addition, the ALJ may employ ordinary techniques of credibility
evaluation such as consideration of prior inconsistent statements
concerning symptoms and statements by the claimant that appear to
be less than candid.  *Id*.  *See also* SSR 96-7p.

The ALJ found Daniels only partially credible "primarily
for repeated episodes of noncompliance with medication, for
inconsistent reporting and for secondary gain motivation."
Tr. 23.  The ALJ did not identify the specific testimony that he

disbelieved.  Although the three reasons cited by the ALJ are proper factors to consider, the Court finds these factors do not constitute a clear and convincing basis for the ALJ's credibility determination under the circumstances of this case.

Daniels appears to function well in a structured living arrangement and remained compliant with inpatient treatment while living at the VA hospital and residential treatment facilities. Her symptoms abated during these periods, and she seemed quite capable of functioning normally.  The record, however, reflects a pattern in which Daniels goes off prescribed medications and decompensates while trying to live on her own.  She has repeatedly failed to remain compliant while living on her own. These periods of noncompliance have coincided with severe worsening of symptoms during which Daniels typically recontacts mental-health providers to resume treatment.

Whether there is justifiable cause for failure to follow prescribed treatment depends on the claimant's individual circumstances, including the capacity of a mentally impaired claimant to evaluate reasonably the risks and benefits of compliance.  *See Nguyen v. Chater,* 100 F.3d 1462, 1465 (9th Cir. 1996)(citing *Blankenship v. Bowen,* 874 F.2d 1116, 1124 (6th Cir. 1989)(mentally impaired claimant should not be expected to exercise good judgment by seeking rehabilitation)).

It is not clear whether the ALJ evaluated the reasonableness of Daniels's periodic noncompliance or considered whether it was a product of her mental illness. Under these circumstances, the Court finds noncompliance is not a convincing basis for the ALJ to discredit Daniels's testimony.

In addition, the Court finds the ALJ's identification of Daniels's inconsistencies in reporting her remote history of substance abuse as a basis for discrediting her testimony is not a convincing basis for the ALJ to discredit Daniels's testimony. During a psychological evaluation in December 2002, Daniels described her substance-abuse history to Bridget Cantrell, Ph.D. Daniels told Dr. Cantrell that she abused drugs and alcohol to self-medicate after being sexually assaulted during her military service. The ALJ found Daniels was "not forthcoming" because she reported to Dr. Cantrell that she had never used alcohol or drugs before her military service even though she described periodic, recreational use of a variety of substances during her childhood and teenage years to other VA mental health providers. In these reports, however, she indicated her use did not become problematic until after she was assaulted in the military.

The Court finds this inconsistency in Daniels's reports about her substance use is not a convincing reason to discredit Daniels's testimony regarding the severity of her current mental health symptoms. Although the ALJ found current substance abuse

was not a material factor in deciding Daniels's claim, he failed to explain why substance abuse in her remote past should be given any weight under the circumstances. Daniels was entirely candid in describing her early drug use to Dr. Cantrell's VA colleagues, and any incentive to misrepresent her past to Dr. Cantrell is not apparent. The Court, therefore, finds the record as a whole reflects Daniels has been a reliable historian. Under these circumstances, her inconsistent description of early drug use does not provide a clear and convincing basis for the ALJ to discredit her testimony.

The basis for the ALJ's finding of secondary-gain motivation is equally unpersuasive as a basis for discrediting Daniels's testimony. During a psychological evaluation by Tania Davis, Ph.D., Daniels reported her only income was a partial-disability VA pension of $78 per month. The ALJ relied on this report as follows:

> She reported that she had filed general assistance and Social Security disability applications; hence it appears she has a secondary gain motivation "with no interest in employment," especially as the report concludes "she does not have employment problems per se but does have significant financial concerns."

Tr. 20, 184.

The claimant's need for income cannot be a valid basis for attacking a claimant's credibility. *Ratto v. Sec'y*, Dep't of Human Health and Human Serv., 839 F. Supp. 1415, 1428-29 (D. Or.

12 - OPINION AND ORDER

1993).  The very purpose of Social Security benefits is to
provide an income to those who cannot earn one due to disability.
In that sense, every Social Security claimant applies for
benefits to obtain pecuniary gain.  *Id.*  Accordingly, the Court
finds the ALJ's discounting of Daniels's credibility on this
basis was erroneous.

    Finally, the record does not support the ALJ's
finding that Daniels had "no interest in employment."  Tr. 20.
Dr. Davis's notes reflect Daniels hoped "to return to at least
part-time work so she can secure stable housing and retain
physical custody of her children."  Tr. 184.

    Based on this record, the Court finds the ALJ failed to
articulate clear and convincing reasons for discrediting
Daniels's testimony and the ALJ's findings are insufficiently
specific to permit the Court to conclude that the ALJ did not
reject Daniels's testimony arbitrarily.  *See Orteza v. Shalala*,
50 F.3d 748, 750 (9th Cir. 1995).  Accordingly, the Court cannot
sustain the ALJ's discrediting of Daniels's testimony.

**II.  <u>Medical Source Statements</u>**

    Daniels contends the ALJ failed to give proper consideration
to the findings and opinions of Frederick Lemere, M.D., and Kerri
Halfant, M.D.  Drs. Lemere and Halfant performed consultative
psychiatric evaluations of Daniels.

13 -   OPINION AND ORDER

The ALJ can reject an examining physician's opinion that is inconsistent with the opinions of other treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)(quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). An uncontradicted opinion may be rejected for clear and convincing reasons. *Thomas,* 278 F.3d at 956-57.

### A. Dr. Lemere

Dr. Lemere performed a psychiatric evaluation of Daniels on October 10, 2001. Dr. Lemere did not find any evidence of current substance abuse, but Daniels admitted her history of methamphetamine abuse.

Dr. Lemere found Daniels was mentally and emotionally agitated and had marked symptoms of depression, anxiety, irritability, motor agitation, thought disorder, and moderately severe psychotic features. Dr. Lemere rated the severity of Daniels's global illness as "marked." Tr. 168.

Dr. Lemere also found marked limitation in Daniels's cognitive abilities to follow instructions involving more than two steps, to learn new tasks, and to perform routine tasks. Dr. Lemere opined Daniels was "too mentally and emotionally agitated and forgetful to be able to concentrate on a job." Tr. 169.

Dr. Lemere also found marked limitation in Daniels's social abilities of relating appropriately to co-workers and supervisors, interacting appropriately in public contacts, and tolerating the pressure and expectations of a normal workplace.

Dr. Lemere estimated Daniels would remain impaired to the degree described in his report for 12 months.

The ALJ did not mention Dr. Lemere's findings or opinion in his written decision. The Commissioner argues this was harmless error. The Commissioner contends the opinions of other physicians are more recent and, therefore, more reliable. She also contends Dr. Lemere's opinion is not applicable because Daniels has now stabilized mentally. Finally, she asserts the ALJ's summary and evaluation of the evidence implicitly rejected Dr. Lemere's opinion.

Each of the Commissioner's arguments ignores the legal standard the ALJ must satisfy to discredit a medical-source statement. When deciding between conflicting medical-source opinions, the ALJ is required to provide specific, legitimate reasons for discrediting one opinion in favor of another. *Thomas v. Barnhart*, 278 F.3d at 957. Here the ALJ did not do so, and his error cannot be cured by the explanations advanced by the Commissioner because the Court is required to review the reasons asserted by the ALJ. *See Connett v. Barnhart,* 340 F.3d 871, 874

(9th Cir. 2003). *See also SEC v. Chenery Corp.,* 332 U.S. 194, 196 (1947).

   B.  **Dr. Halfant**

Dr. Halfant performed a consultative psychiatric evaluation of Daniels on March 20, 2002. She found Daniels could perform both simple, repetitive tasks and detailed, complex tasks fairly well. She also concluded Daniels could accept instructions from supervisors and interact with co-workers and the public fairly well. She did not think, however, Daniels would deal well with a typical amount of work stress. Dr. Halfant opined Daniels could perform work activities on a consistent basis and maintain regular attendance.

Dr. Halfant qualified her findings of mild impairment as follows:

> This is on the basis of living in a highly structured living situation and attending numerous mental health treatment groups currently. I think that this is the reason she is able to function the way she is functioning currently.
>
> Bipolar disorder is a fluctuating illness and while it does not seem to be disruptive currently, there is a great potential for it to flare up at any point and impair her ability to complete a normal workday or workweek.

Tr. 429.

Dr. Halfant's opinion that Daniels's ability to function requires a structured living arrangement appears to be supported

by other providers. For example, Andrew Saxon, M.D., and Lisa Adriance, Ph.D., found Daniels's symptoms of depression worsened after she moved out of the VA domiciliary. In addition, after leaving the domiciliary, Daniels attended therapy groups sporadically and took medications intermittently. By April 26, 2002, Daniels required inpatient hospitalization to stabilize her mental and emotional functions.

The ALJ discussed Dr. Halfant's evaluation and relied on her findings of mild limitations. His RFC assessment accommodated Dr. Halfant's finding that Daniels could not deal with stress at work by precluding all but "no-stress positions described as having no production quotas, goals or close teamwork." Tr. 23.

Based on the quoted portion of Dr. Halfant's opinion, the ALJ should have considered whether Daniels's mild functional limitations were dependent on a highly structured living arrangement, whether Daniels would be able to maintain a structured living arrangement, and whether Daniels's anticipated living conditions would cause symptom exacerbations or impair her ability to complete a normal work schedule. It is not clear from the ALJ's narrative, however, whether he considered these aspects of Dr. Halfant's opinion.

Accordingly, the Court finds the record does not clearly indicate that the ALJ's RFC assessment accurately reflected the

functional limitations that Daniels must overcome to engage in work.

## III. Remand

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir.), *cert. denied*, 531 U.S. 1038 (2000). The issue turns on the utility of further proceedings.

A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is not sufficient to support the Commissioner's decision. *Rodriguez v. Bowen,* 876 F.2d 759, 763 (9th Cir. 1989).

Improperly rejected evidence should be credited and an immediate award of benefits directed when "(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Harman v. Apfel*, 211 F.3d at 1178 (quoting *Smolen v. Chater*, 80 F.3d at 1292). The third prong of this test is actually a subpart of the second. *See Harman*, 211 F.3d at 1178 n.7.

In this instance, the Court finds the ALJ's errors do not warrant an immediate award of benefits in part because Daniels does not identify the specific testimony that she relies on to establish her disability or provide any grounds on which her testimony would establish disability.

Although Dr. Lemere's opinion may be adequate to establish Daniels's disability on the date Dr. Lemere issued his report, his opinion does not resolve the issues necessary for a determination of Daniels's disability because it does not establish the onset date of her disability or satisfy the 12-month duration requirement for a determination of her disability. The record does not confirm Dr. Lemere's estimate that Daniels's limitations would persist at a disabling level for 12 months. In addition, Dr. Halfant's opinion does not establish Daniels's disability in the absence of a reevaluation of Daniels's RFC and supplemental vocational evidence that accurately reflects her functional limitations. Finally, it is not clear from the record that the ALJ would be required to find Daniels disabled if the improperly rejected evidence were credited as true.

Accordingly, the Court concludes further administrative proceedings are necessary. *See Harman v. Apfel*, 211 F.3d at 1178. *See also Smolen v. Chater*, 80 F.3d at 1292.

## CONCLUSION

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED this 3rd day of November, 2005.

/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge